The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PRIMERICA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SHANNON L. ATKINSON, et al.,<br><br>Defendant. | No. 3:11-cv-05299-RBL<br><br>ORDER GRANTING MOTION TO COMPEL [Dkt. #47]<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT [Dkt. #24] |

This matter is before the Court on Defendant Allred's Motion to Compel [Dkt. #47] and Motion for Summary Judgment [Dkt. #24]. Allred moves for an order compelling discovery of answers to interrogatories and requests for production of documents sent to Defendant Atkinson, and an award of attorney fees. Atkinson argues that an order compelling discovery is now moot, and that an award of attorney fees is inappropriate. Allred also moves for summary judgment for the proceeds of two life insurance policies. Atkinson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether Mr. Atkinson did in fact properly change the designated beneficiary of the policies, and whether she has an interest in the proceeds of the policies.

ORDER - 1

For the reasons set forth below, the Court GRANTS the Motion to Compel and GRANTS the Motion for Summary Judgment as to the Prudential Policy, but DENIES the Motion for Summary Judgment as to the Primerica Policy.

## I.   MOTION TO COMPEL

On July 25, 2011, Defendant Carolyn Allred sent Defendant Shannon Atkinson interrogatories and requests for production.  From July 25 to the filing of this instant motion, February 14, 2012, Allred and Atkinson discussed the answers to the interrogatories communicated on at least seven occasions.  On a letter dated October 21, 2011, and a Declaration filed with the Court on October 24, 2011, Atkinson promised answers to the interrogatories within days.  However, Atkinson did not forward the answers as promised.  In addition, Allred sent another letter as recently as February 3, 2012, requesting answers to the interrogatories, and gave Atkinson a deadline of February 13, 2012, to respond or else a motion to compel would be made.  Atkinson did not forward answers to the interrogatories or the requests for production.  Atkinson did not forward answers to the interrogatories and requests for production until February 23, 2012, after Allred filed this Motion to Compel, and almost six months after the discovery responses were to have been completed.

Because Atkinson has forwarded her answers to the interrogatories and requests for production, the Motion to Compel is moot, with the exception of the payment of attorney fees. In her Motion to Compel, Allred requests attorney fees in the amount of $1,000 based on Atkinson's failure to provide timely discovery responses to the interrogatories and requests for production, and the costs of bringing this Motion.

Atkinson argues that it would be inequitable for the Court to impose sanctions for her failure to provide a timely response to Allred's interrogatories and requests for production.

Atkinson argues that not only have the interrogatory responses been provided, but the responses were also provided in Atkinson's memorandums in opposition to Allred's motion for summary judgment [Dkt. #32, #35]. Additionally, Atkinson argues that sanctions are not appropriate because Allred has not complied with District Court Local Rule 37.1(b), which obligates the parties to confer with one another before bringing a motion to compel or to request sanctions.

Federal Civil Procedure Rule 37(a)(3)(B) permits a party to bring a motion to compel discovery responses if "a party fails to answer an interrogatory submitted under Rule 33," or fails to respond to a request for production under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iii), (iv). If the motion to compel is granted or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. FED. R. CIV. P. 37(a)(5)(A). However, "the court must not order this payment" if:

 (i) The movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

 (ii) The opposing party's nondisclosure, response, or objection was substantially justified; or

 (iii) Other circumstances make an award or expenses unjust.

*Id.*

Not only did Allred's attorney attempt in good faith to resolve the discovery dispute before filing the motion, but Allred's attorney also attempted to comply with Local Rule 37.1(b). Over the course of six months after Allred sent Atkinson the interrogatories and requests for production, Allred communicated to Atkinson—both in writing or orally—on at least five occasions about the discovery responses, and as recently as February 3, 2012. Additionally,

Atkinson promised on at least two occasions that answers to the discovery requests would be within days, but Atkinson never complied with his own promises. Atkinson did not comply with the discovery requests until after Allred filed this motion, six months after Atkinson should have complied with the discovery requests. *See* FED. R. CIV. P. 33(b)(2).

Allred provided Atkinson with ample time to respond to the discovery requests and to comply with the discovery rules. The Court therefore, awards Allred reasonable attorney's fees incurred in making this motion in the amount of $500.

## II.   MOTION FOR SUMMARY JUDGMENT

### A. Background

At the time of his death on November 12, 2010, Jerry Atkinson had two life insurance policies. The first was issued by Primerica Life Insurance Company on May 17, 1993, and it originally designated Mr. Atkinson's wife, Defendant Shannon Atkinson, as its primary beneficiary. The second policy was issued by Prudential Insurance Company of North America. The Prudential Policy was an employment benefit from Mr. Atkinson's employer, Sonoco Products Company. Mr. Atkinson originally designated Defendant Atkinson as the sole primary beneficiary of the Policy.

On August 21, 2009, Mr. Atkinson and Defendant Atkinson separated. After the separation, Mr. Atkinson and Defendant Carolyn Allred moved in together. Mr. Atkinson subsequently changed the sole primary beneficiary of his Prudential Life Insurance Policy from Defendant Atkinson to Defendant Allred on November 3, 2009. The effective date of this designation was January 1, 2010.

On November 12, 2009, Defendant Atkinson filed a petition for legal separation from Mr. Atkinson in Pierce County Superior Court. On December 1, 2009, Mr. Atkinson changed the

Primary Beneficiary of his Primerica Life Insurance Policy from Defendant Atkinson to Defendant Allred. The following day, Mr. Atkinson filed a counter-petition for dissolution of marriage in Pierce County Superior Court. On January 20, 2010, the Superior Court enjoined Mr. Atkinson and Defendant Atkinson from changing beneficiaries of any insurance policies, including life insurance policies.

On November 12, 2010, Mr. Atkinson committed suicide. The action for dissolution of the Atkinson marriage was subsequently dismissed on November 15, 2010.

Both Defendants have submitted claims for the proceeds of the Prudential Policy and the Primerica Policy.[1] Allred, as the designated beneficiary of both policies, moves for summary judgment against Atkinson, seeking the proceeds of both life insurance policies. Atkinson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether Mr. Atkinson changed the beneficiary of each of the policies and whether Atkinson has an interest in the proceeds of each policy.

**B. Authority**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. FED. R. CIV. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual

---

[1] By order of this Court, both Primerica and Prudential have paid the amount of the policy, plus interest, into the registry of the Court. [Dkt. # 12, #21]. The Court has dismissed claims against both Primerica and Prudential related to this action. *Id.*

disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**C. Discussion**

1. <u>Prudential Policy</u>

Allred moves for summary judgment on the Prudential Policy, arguing that she is entitled to the proceeds of the Policy because she is the designated beneficiary, Atkinson has no claim to the proceeds of the Policy, and Atkinson's affirmative allegations are preempted by ERISA and governed by federal law. Atkinson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether: (1) Mr. Atkinson changed the designated beneficiary; (2) Mr. Atkinson needed Atkinson's consent to change the beneficiary; and (3) Atkinson may submit a qualified domestic relations order (QDRO) nunc pro tunc to establish her entitlement to the proceeds of the Policy.

The proceeds of the Prudential Policy are governed by ERISA. 29 U.S.C. § 1001. ERISA requires that every employment plan "shall specify the basis on which payments are made to and from the plan," 29 U.S.C. §1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The fiduciary shall make payments to the beneficiary who is "designated by a participant, or by the terms of [the] plan." 29 U.S.C. § 1002(8). Here, Mr. Atkinson designated Allred as the beneficiary of the Policy on November 3, 2009, and she is entitled the proceeds in accordance to the Policy.

Atkinson's arguments fail to raise any genuine issue of material fact as to whether she is entitled to the proceeds of the Policy.  To support her claim of undue influence and fraud, Atkinson submitted her own Declaration and the Declaration of Kenneth Wrenall, a co-worker, arguing that it was not Mr. Atkinson who changed the identity of the beneficiary, but someone else.  These claims are not properly pleaded, and the Declarations are riddled with lack of personal knowledge, speculation, and hearsay.  *See* FED. R. CIV. P. 9(b) and 56(c)(4).

Similarly, Atkinson attempts to point out inconsistencies in the Self Service document as evidence that Mr. Atkinson was not the person who changed the beneficiary.  For example, Atkinson points out that in one location in the document, it identifies Allred as "Friend," and in another location, states "Dependent/Beneficiary Added," when his only dependents were Atkinson and his son.  *See Mem. Opposing Mot. for Summ. J.* at 5 [Dkt. #32].  Atkinson's arguments do not show that Mr. Atkinson did not make the change to the Policy.  It is not inconsistent to identify Allred as a friend, and then to elsewhere identify her as a beneficiary.  In addition, Atkinson focuses on "Dependent" of "Dependent/Beneficiary Added," and ignores the slash.  The slash in English punctuation is commonly used as a substitute for the word "or."  In this case, the evidence suggests that Mr. Atkinson was not adding a dependent, but was adding a beneficiary, his friend, Allred.  Although Atkinson may perceive some inconsistencies in the Self Service document, the inconsistencies do not raise a genuine issue of material fact as to whether someone other than Mr. Atkinson changed the beneficiary of the Policy to Allred.

Additionally, no genuine issue of material fact exists as to whether the proceeds of the Policy are Atkinson's community property under Washington State law.  ERISA's preemption provision provides that ERISA's provisions shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29

U.S.C. § 1144(a). While this provision is interpreted broadly, the provision is to be read practically. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Generally, a state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Id.* at 656. Because Atkinson is attempting to receive the proceeds of an ERISA policy by claiming community property under state law, there is no question that the law has a connection with and reference to the Policy. Therefore, any claim of community property under Washington State law is preempted by ERISA.

There is no genuine issue of material fact that Allred is the proper beneficiary of the Policy. Atkinson argues that ERISA required Mr. Atkinson to have obtained spousal consent before changing the beneficiary. Allred argues that spousal consent was not needed to change the beneficiary because the life insurance policy is not a pension benefit plan, but a welfare benefit plan.

Spousal consent is not required to change the beneficiary of the Policy. ERISA requires spousal consent "only with respect to ERISA pension benefit plans, and not ERISA welfare benefit plans." 29 U.S.C. § 1002(1), (2); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988). A life insurance policy under ERISA is a welfare benefit plan, not a pension benefit plan, and thus, Section 1055 surviving spouse provisions do not apply. *Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1101 (9th Cir. 2006). Because this life insurance policy is a welfare plan, Mr. Atkinson was not required to obtain spousal consent from Atkinson. Therefore, Mr. Atkinson did properly change the beneficiary of the Policy to Allred.

Lastly, no genuine issue of material fact exists as to whether Atkinson has a claim to the proceeds of the Policy. Atkinson argues that she should be able to submit a QDRO nunc pro

tunc from the Pierce County Superior Court to establish her entitlement to the proceeds of the Policy. Allred argues that not only is a QDRO nunc pro tunc not available to Atkinson, but she is not an "alternate payee." Accordingly, Allred argues that because Mr. Atkinson changed the beneficiary more than two months before the TRO was entered, there was no violation of the TRO and thus, she is entitled to the proceeds of the Policy.

The January 20, 2010, TRO issued by the Pierce County Superior Court is a domestic relations order. Under ERISA, a domestic relations order is "any judgment, decree, or order … which … relates to the provision of child support, alimony payments, or marital rights to a spouse …." 29 USC § 1056(d)(3)(B)(ii). A QDRO is a domestic relations order that recognizes the existence of an alternate payee's right to receive all or a portion of the benefits payable with respect to a participant under the plan. 29 USC § 1056(d)(3)(B)(i). A domestic relations order is also a QDRO only if it clearly specifies:

(i) The name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) The amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount of percentage is to be determined,

(iii) The number of payments or period to which such order applies, and

(iv) Each plan to which such order applies.

29 U.S.C § 10569d)(3)(C). The Court requires substantial compliance with these requirements and will not give an unduly narrow reading of these requirements. *Hamilton*, 433 F.3d at 1097. To determine whether a dissolution qualifies as a QDRO, "[t]he pivotal question is whether the dissolution order 'clearly contains the information specified in the statute that a plan administrator would need to make an informed decision.'" *Id.*

In this case, the TRO issued by the Superior Court does not contain any of the requirements of a QDRO. Thus, because Mr. Atkinson changed the beneficiary of the Policy to Allred two months before the TRO, Allred is the proper beneficiary of the Policy.

While it does not appear that a QDRO nunc pro tunc would be proper in this case, but that is not for this Court to decide. An order nunc pro tunc is proper to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. *State v. Kilgore*, 167, Wn.2d 28, 50 fn 7, 216 P.3d 393 (2009) (quoting *State v. Ryan*, 146 Wn. 114, 117, 261 P. 775 (1927). Atkinson seeks a QDRO nunc pro tunc; she is not trying to remedy a clerical error. She is trying to go back in time and obtain an entirely different order than what the record reflects.

Even if Atkinson was to obtain a QDRO nunc pro tunc from Superior Court, it would have no bearing on the proceeds of the Policy because Atkinson is not an alternate payee. An alternate payee is any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant. 29 U.S.C. § 1056(d)(3)(K). If a person is a qualified alternate payee, they are entitled to 18 months from the date that the benefits would be payable to try to cure any defects in the original domestic relations order and obtain an enforceable QDRO. *Trustees of the Directors Guild of America v. Tise*, 234 F.3d 415, (9th Cir. 2000).

Here, there is no genuine issue of material fact that Atkinson is not an alternate payee. The January 20, 2010, TRO does not give Atkinson any right to receive any of the benefits under the Policy. The TRO was merely an order to enjoin the parties from changing the beneficiaries

ORDER - 10

of any insurance policies. Therefore, because Atkinson is not an alternate payee, she may not cure any defects of the TRO.

Allred is the proper beneficiary of the Policy. Because Mr. Atkinson changed the beneficiary of his Policy two months before the TRO, he was not in violation of that Order. Additionally, Atkinson has not presented any genuine issue of material fact as to whether Allred is not the proper beneficiary of the Policy. Thus, summary judgment is granted as to the Prudential Policy, and Allred is entitled to the proceeds of the Policy.

2. Primerica Policy

Allred moves for summary judgment on the Primerica Policy, arguing that she is entitled to the proceeds of the Policy because she is the designated beneficiary, and Atkinson has no interest in the proceeds of the Policy. Atkinson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to the authenticity of the signatures on the form that changed the beneficiary of the policy from Atkinson to Allred.

There is no genuine issue of material fact as to whether Mr. Atkinson violated the January 20, 2010, TRO of the Pierce County Superior Court. Mr. Atkinson changed the designated beneficiary of his Primerica Policy from Atkinson to Allred on December 2, 2009, about a month and a half before the TRO. Therefore, the change in beneficiary is not a violation of the TRO.

Atkinson has no community property interest in the proceeds of the Primerica Policy. Atkinson alleges that the proceeds of the Policy constitute community property to the extent that they were funded by community property. However, Atkinson's status as a surviving spouse is not a sufficient basis for a community property claim. *Aetna Life Ins., Co. v. Bent*, 110 Wn.2d, 368, 371 (1988). To determine the ownership character of a term life insurance policy, the Court

looks to the character of funds used to pay the premium of the most recent term, otherwise known as the "risk payment doctrine." *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 659 (1984). A surviving spouse has a community property interest in a life insurance policy only to the extent that community funds were used to purchase the policy. *Bent*, 110 Wn.2d at 371. But, if community funds were not used to pay the last premium, there is no community interest in the policy. *Id.* Because the Atkinsons were still legally married at the time of Mr. Atkinson's death, the last insurance premium presumptively constitutes community earnings. *Id.* at 372.

To rebut the community property presumption, RCW 26.16.141 provides that "[w]hen spouses … are living separate and apart, their respective earnings and accumulations shall be the separate property of each." Although mere physical separation does not dissolve the community, RCW 26.16.141 applies to those marriages that are for all practical purposes "defunct." *Bent*, 110 Wn.2d at 372.

Community funds were not used to pay the last premium on the Policy. Although the Atkinsons were still legally married at the time of Mr. Atkinson's death, the evidence suggests that for all practical purposes their marriage was defunct. At the time of Mr. Atkinson's death, the Atkinsons had been living "separate and apart" for almost 15 months. Atkinson had filed a petition for legal separation in Pierce County Superior Court in November 2009, and Mr. Atkinson filed a Counter-Petition for Dissolution of Marriage in December 2009. The conduct of both Atkinson and Mr. Atkinson demonstrate that their marriage was defunct, and thus, their respective earnings were the separate property of each. Because Mr. Atkinson used his separate funds from his joint checking account with Allred for the purpose of paying his last premium on his Primerica Policy, Atkinson has no community property interest in the proceeds of the Policy.

Nevertheless, there is a genuine issue of material fact—barely— as to whether Mr. Atkinson manifested an intent to change the beneficiary of his Policy. Allred argues that Mr. Atkinson manifested his intent to change the beneficiary to Allred by completing and signing the Primerica "Multipurpose Change Form" in front of two witnesses, and submission of this form to Primerica was sufficient to change the beneficiary to Allred. Atkinson argues that Mr. Atkinson has not manifested an intent to change the beneficiary because there is a genuine issue of material fact as to whether both Mr. Atkinson's signature and the signatures of the two witnesses on the Form are a forgery.

In general, the Court will give effect to the intention of the insured when the insured has substantially complied with the provisions of the policy regarding attempted changes of beneficiaries. *Allen v. Abrahamson*, 12 Wn. App. 103, 105 (1974). An insured has substantially complied with the terms of a policy when the insured has not only manifested an intent to change beneficiaries, but has done everything which was reasonably possible to make that change. *Id.*

Here, it appears that Mr. Atkinson manifested his intent to change the beneficiary of his Primerica Policy when he completed and signed the Primerica "Multipurpose Change Form" in front of two witnesses, and submitted the Form to Primerica. However, Atkinson has raised issues of genuine fact as to the authenticity of Mr. Atkinson's and the two witnesses' signatures. In her Declaration, Atkinson claims that there are discrepancies between his actual signature and his purported signature on the Form. Atkinson has also provided the Declarations of the two alleged witnesses on the Form. One of the witnesses, Christopher Ryan, claims that the signature on the Form is not his, and his signature was forged. The other witness, Gary Goodner, claims that the signature appears to be his, but he cannot be sure. Mr. Goodner also claims that he has never been in the presence of both Mr. Atkinson and Mr. Ryan when Mr. Atkinson signed any

document other than a Union document.  The Declarations also present a genuine issue of material fact as to whether all three men were even present at Sonoco Products at the time the signatures supposedly took place.

The Court is reluctant to give weight to any of Atkinson's arguments regarding any alleged forgery.  Atkinson has neither provided a handwriting expert to disprove the authenticity of the signatures, nor has she properly pleaded fraud or forgery in her Answer to the Complaint [Dkt. #19].  *See* FED. R. CIV. P. 9(b).  Further, Atkinson is inconsistent as to whether Mr. Atkinson changed the beneficiary of his Primerica Policy.  Under the penalty of perjury, Atkinson filed a document in the Pierce County Superior Court case that Mr. Atkinson did change the beneficiary under the Primerica Policy, and that this change violated the terms of the Superior Court's January 20, 2010 TRO.  Atkinson now argues conveniently that Mr. Atkinson did not change the beneficiary, but it was someone else.

Lastly, although the Declarations do raise the slightest issue of genuine fact as to whether the signatures were forged, not being able to recall whether someone signed a document does not equate to their signature being a forgery.  Because people sign numerous documents in a span of two years, it is a difficult task for anyone to remember all the documents that they have signed.  Therefore, it is difficult to determine whether a signature is forged without the opinion of a handwriting expert.

### III.   CONCLUSION

Allred's Motion to Compel [Dkt. #47] is GRANTED.  Atkinson is to pay reasonable attorney fees in the amount of $500, within thirty days of the date of this order.  Allred's Motion for Summary Judgment [Dkt. #24] as to the Prudential Policy is GRANTED and Allred is entitled to receive the proceeds of the Prudential Policy.  Allred's Motion for Summary

Judgment as to the Primerica Policy [Dkt. #24] is DENIED because Atkinson has raised a genuine issue of material fact as to whether the signatures that designated Allred as the beneficiary are a forgery.

IT IS SO ORDERED.

DATED this 18th day of April, 2012.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE