HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PRIMERICA LIFE INSURANCE
COMPANY,

                    Plaintiff,

        v.

SHANNON L. ATKINSON, et al.,

                    Defendant.

CASE NO. 11-cv-05299-RBL

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT [Dkt. #66]

ORDER GRANTING MOTION TO
AMEND [Dkt. #72]

        THIS MATTER is before the Court on Defendant Carolyn Allred's Motion for Summary

Judgment [Dkt. #66] and Defendant Shannon Atkinson's Motion to Amend Pleadings [Dkt.

#72]. The underlying case involves Jerry Atkinson's hotly disputed Primerica Life Insurance

Policy. [1]   At the time of Mr. Atkinson's suicide, he was separated from his wife, Shannon

Atkinson, and his Primerica policy named his girlfriend, Carolyn Allred, as the primary

beneficiary.  Allred and Atkinson dispute the proceeds of the policy.

        As the named primary beneficiary, Allred moves for summary judgment.   In response,

Atkinson argues that (1) there is evidence of a forgery, (2) marital assets were used to purchase

---

[1] The case originally involved two life insurance policies: (1) a Primerica policy and (2) a Prudential Life Insurance Policy.  Allred was awarded the proceeds of the Prudential policy in a prior summary judgment Order. (Dkt. #54.)

1  the Primerica policy, and (3) the Court should impose a constructive trust.[2]  Atkinson also moves

2  to amend her pleadings to assert cross-claims against Allred for forgery based on her experts'

3  opinions: one expert opines that the documents were forged,  and another expert claims that

4  Allred is the forger.  Allred opposes the additional  cross-claims for the same reason she has

5  moved for summary judgment: she argues there is no competent expert testimony that the

6  signatures were forged, and that amendment would therefore be futile.  Allred also argues that

7  the new cross-claim is unduly prejudicial.  Both motions depend on the admissibility of

8  Atkinson's experts.  For the reasons stated below, Defendant Allred's Motion for Summary

9  Judgment [Dkt. #66] is DENIED and Defendant Atkinson's Motion to Amend [Dkt. #72] is

10  GRANTED.

## I.   BACKGROUND

12      This case involves Jerry Atkinson's Primerica Life Insurance Policy.  The policy was

13  issued in 1993 and originally designated Defendant Shannon Atkinson as the primary

14  beneficiary.  On August 21, 2009, Mr. Atkinson separated from his wife,  Shannon Atkinson,

15  and moved in with Defendant Carolyn Allred.  Shannon Atkinson filed a petition for legal

16  separation on November 12, 2009.

17      On the first day of December, the primary beneficiary of Mr. Atkinson's Primerica Life

18  Insurance Policy was changed from Atkinson to Allred.  The defendants dispute how this change

19  took place.  While Allred claims Mr. Atkinson changed his policy, Atkinson claims that Allred

20  forged Mr. Atkinson's signature.  The day after the beneficiary on the Primerica Life Insurance

21  Policy was changed, Mr. Atkinson filed a counter-petition for dissolution of his marriage to

---

23  [2] Defendant Atkinson appears to believe that, regardless of whether the documents were forged, the court should
24  impose a constructive trust on the proceeds, with her as the beneficiary of that trust.

1    Atkinson.  Almost a year later, Mr. Atkinson committed suicide.  On November 15, 2010, the

2    superior court dismissed the Atkinsons' dissolution action .

3    Both Defendants submitted claims for the proceeds of the policy.  Allred, as the

4    designated beneficiary, previously moved for summary judgment against Atkinson.  The Court

5    denied Allred's Motion for the benefits of the Primerica policy, reasoning that Atkinson had

6    created a genuine issue of material fact with regards to whether the signatures on the form

7    changing the beneficiary were forged.  Specifically, Atkinson filed a declaration that noted

8    discrepancies between Mr. Atkinson's signature on the form and his actual signature; she filed a

9    declaration from Christopher Ryan, one of the witnesses on the change of beneficiary form, that

10   stated his signature on the form was a forgery; she filed a declaration from Gary Goodner, the

11   other witness on the form, that stated he had no recollection of signing the form; and she

12   produced some evidence that the three men were not present at Sonoco Products at the time the

13   signatures took place.  The Court noted that it was difficult to determine whether a signature is

14   forged without the opinion of a handwriting expert.

15   Allred and Atkinson have now armed themselves with experts.  Defendant Atkinson has

16   obtained two:  one, Wendy Carlson, claims that the signatures are forgeries; and the other, Curt

17   Baggett, claims specifically that Allred is the forger.  Allred's expert, James Green, opines that

18   the signatures are legitimate and that Atkinson's experts are not qualified to render an opinion.

19   In light of the expert testimony, Allred moves for summary judgment again.  Allred

20   argues that there is no competent evidence that the signatures are forged and there is no issue as

21   to whether Mr. Atkinson and the witnesses were all present at Sonoco at the time the documents

22   were signed.  Defendant Atkinson responds (1) that she has obtained two expert opinions

23   identifying the signatures as forgeries, (2) that Mr. Atkinson used marital assets to purchase the

24

policy so that Allred is only entitled to half, and (3) that the Court should impose a constructive trust.[3]  Defendant Atkinson also moves to amend her pleadings to add cross claims against Allred for forgery and fraud.   Both motions depend on the admissibility of Defendant's expert's testimony.

## II.   ANALYSIS

### A.  Defendant Allred's Motion for Summary Judgment

#### i.  Expert Opinion

Defendant Atkinson has offered two experts: Wendy Carlson and Curt Baggett.  Both experts have opined that the signatures are forgeries, and Baggett has claimed that Allred is the forger.  Allred argues that both should be excluded, which would leave Defendant Atkinson with no evidence of a forgery—entitling Allred to summary judgment (and also making any amended cross-claim moot).

In federal courts, Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

---

[3] It is unclear whether she wants the constructive trust on Jerry Atkinson's Prudential Life Insurance Policy or the Primerica Life Insurance Policy.  To the extent Defendant Atkinson argues that a constructive trust should be placed on the Prudential policy, the argument fails.  This Court has already granted the proceeds of the Prudential policy to Allred.  (Dkt. #54.)  The cases Defendant Atkinson cite have nothing to do with whether a constructive trust is appropriate in this case on the Primerica policy.  Because the Court decides summary judgment on other grounds, the Court does not reach the constructive trust argument.

FED. R. EVID. 702.

"The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The district court must assess the reliability of the expert testimony and is specifically "charged with determining whether the proffered expert testimony is trustworthy." *Barabin v. AstenJohnson, Inc.*, – F.3d –, Nos. 10–36142, 11–35020, 2012 WL 5669685, *3 (9th Cir. 2012) ("The potentially significant influence of expert testimony underscores the importance of assiduous 'gatekeeping' by trial judges."). The court's "'basic gatekeeping obligation' applies with equal force in cases . . . where 'non-scientific' experts wish to relate specialized observations derived from knowledge and experience that is foreign to most jurors." *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2004) (allowing expert testimony on handwriting analysis). Although a district court must make an explicit finding of reliability, the inquiry does not mandate a separate *Daubert* hearing. *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2006).

Allred argues that Wendy Carlson's testimony should be excluded because (1) she lacks proper training, (2) her opinion is based on insufficient facts and data, and (3) her methodology is fatally flawed. Atkinson argues that Carlson reliably used the "ACE-V method" of handwriting evaluation which is the same method used by law enforcement agencies.[4]

Carlson's Curriculum Vitae reflects that she completed a two-year course and apprenticeship in forensic document examination and handwriting identification through the International School of Forensic Document Examination. Curt Baggett (Atkinson's other expert) and his son run the school that certified Carlson. Allred argues the certification program is

---

[4] The acronym "ACE-V" stands for analyze, compare, evaluate, and verify.

1   insufficient to give Carlson the training, education, and knowledge to be a qualified document

2   examiner.  Allred points to Carlson's lack of membership in the American Board of Forensic

3   Document Examiners (ABFDE) and to the "questionable qualifications"[5] of Baggett.

4          As Atkinson argues, the ABFDE does not have a monopoly on who can and cannot be an

5   expert in federal court.  Under Rule 702, an expert can qualify through either knowledge, skill,

6   experience, training, *or* education.  Even if Carlson's certification from the International School

7   of Forensic Document Examination is by itself insufficient to qualify her as an expert, she is

8   qualified to testify as an expert through her experience and subsequent trainings.  According to

9   Carlson, she has participated in a number of CLEs, she has lectured in document examination at

10  a high school, and she has taught courses to the Denver Elections Division.  Furthermore,

11  Carlson has testified in a number of cases as an expert document examiner.  Allred's challenges

12  to Carlson's qualifications as an expert go to the weight of Carlson's testimony, not its

13  admissibility.

14         Allred also argues that, even if Carlson is a qualified expert, she does not satisfy the

15  requirements of Rule 702 because she used insufficient data and her methodology is not based on

16  reliable principles and methods.  Carlson claims to use the "ACE-V" method.  Although

17  Carlson's original report calls the method the "ACE" method, which she claims stands for

18  analyze, compare, and evaluate, Atkinson's attorney later clarifies that Carlson uses the "ACE-

19  V" method and describes the validity of the method.  Allred claims that the "V," which stands

20  for independent verification, in the ACE-V method is the most important part.  Allred argues that

21  Carlson's methodology is not reliable if she did not use the "ACE-V" method.

22

23  _____

24  [5] Allred argues that Baggett is also not a qualified expert, an issue this Court does not reach.

1    "Handwriting analysis is performed by comparing a known sample of handwriting to the

2    document in question to determine if they were written by the same person." *United States v.*

3    *Prime*, 431 F.3d 1147, 1153 (9th Cir. 2004).  Carlson has adequately compared the known

4    samples of handwriting.  Her report describes her reasoning for her forgery conclusion.  She

5    specifically points out differences in the formation of the letters and numbers, and she notes the

6    process of her comparison.  Although Allred has criticized Carlson for failing to conduct in

7    independent verification, the initial declaration of Allred's expert, James Green, does not

8    describe his methodology at all.  At most, he states he engaged in a "comparison process."

9    (Green Dec., Dkt. #66 at 6.)  If a "comparison process" is good enough for Allred's expert, the

10   ACE method is sufficiently reliable to compare a known sample of handwriting with a

11   questioned document.

12       The Ninth Circuit has never expressly stated that the only reliable method is the ACE-V

13   method, and the only complaint Allred seems to have about Carlson's methodology is that she

14   did not have an independent verification done.  Even if the Court found that Carlson only

15   engaged in an ACE methodology, Baggett verified the conclusion in his capacity as a document

16   examiner.[6]  Carlson's testimony creates a genuine issue of material fact, and the issue is

17   appropriate for a jury.  Any challenge to the amount and type of signatures that Carlson used

18   during her comparison is an appropriate subject for cross-examination.

19       Next, Allred argues that Baggett's Letter of Opinion should be excluded because it is

20   based on insufficient data, fails to identify any process or methodology utilized to reach the

21   conclusion, and fails to provide any reasoning for concluding that Allred forged the signature.

22   Atkinson responds by defending Baggett's credentials and methodology.  As Carlson's testimony

23   _____

24   [6] While Baggett's Letter of Opinion fails to describe the methodology used to determining that Allred forged the
     signatures, he did describe his methodology in determining that the signatures were forged.

1  is enough to survive summary judgment, the Court does not need to determine the admissibility

2  of Baggett's testimony.  To the extent that his Letter of Opinion is his ultimate testimony, it is

3  nothing more than ipse dixit—an assertion without proof.  Assuming that Baggett is a qualified

4  expert and uses reliable methodology, his Letter of Opinion provides no facts, reasoning, or

5  analysis.  He states, "Carolyn Allred did indeed forge the signature of Christopher Ryan and

6  authored the handwriting on the questioned documents."  But he does not offer any basis for

7  arriving at that conclusion.

8          Even without the expert opinions, there are still genuine issues of material fact with

9  respect to the forgery issue.  One of the witnesses to the policy change has categorically denied

10  that it is his signature on the witness line:  "I once again want this court to know that I did not

11  place my signature on that document and I never gathered in one place with Jerry Atkinson and

12  Gary Goodner to witness Jerry sign any document, not on December 1, 2009 or at any other

13  time."  (Ryan Dec., Dkt. # 67 at 2.)  Whether the signatures on the documents are forged is an

14  appropriate question for the jury.

15          Allred's Motion for Summary Judgment on the grounds that there is no competent

16  evidence of forgery is DENIED.

17          *ii.   Community Property on the Primerica Policy*

18          Atkinson also argues that summary judgment should be denied because there is a genuine

19  issue of material fact regarding how Mr. Atkinson paid for the Primerica policy. Specifically, she

20  claims that Mr. Atkinson had overdraft protection on the bank account used to pay for the

21  Primerica policy and that the overdraft protection dipped into her personal bank account—

22  effectively making her pay for the Primerica policy.  Allred attempts to avoid this argument,

23

24

ORDER GRANTING MOTION TO AMEND [DKT.
#72] - 8

1  claiming that, under "the law of the case," the Court has already determined that community

2  property was not used to pay for the Primerica policy.

3       Allred correctly states that the Court previously *discussed* the community property issue,

4  but to the extent she claims that the Court dismissed any community property claim, she is

5  incorrect.[7]  The Court did not address any argument that Mr. Atkinson actually used community

6  property to pay for the life insurance.  "A surviving spouse has a community property interest in

7  a life insurance policy only to the extent that community funds were used to purchase the

8  policy."  *Aetna Life Ins. Co. v. Bunt*, 110 Wash. 2d 368, 371 (1988).  If community funds were

9  used to purchase the policy, the surviving spouse is entitled to one-half of the proceeds.  *Francis*

10 *v. Francis*, 89 Wash. 2d 511, 515 (1978).

11      Atkinson has produced a declaration asserting that, because of the overdraft protection,

12 Mr. Atkinson was using her funds to pay for the Primerica policy at the time of his death.

13 Whether Mr. Atkinson used Atkinson's funds to pay for the Primerica policy is a genuine issue

14 of material fact and is an appropriate question for the jury.

15      **B.  Atkinson's Motion to Amend**

16      Atkinson seeks to amend her answer to assert cross-claims against Allred for fraud and

17 forgery.  Leave to amend a complaint under Rule 15(a) "shall be freely given when justice so

18 requires."  *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing

19

20 _____

[7] The Court previously stated that if the Court applied a *presumption* of community property, without considering
21 whether Mr. Atkinson *actually* used community property to pay for the Primerica policy, the presumption was
   overcome because the marriage was defunct. (Dkt. #54.)  The Court's prior order seems to have confused the
22 Prudential policy and the Primerica policy, as the presumption only applies "[i]f the term policy is a fringe benefit of
   a married employee's job."  *See Aetna Life Ins. Co. v. Bunt*, 110 Wash. 2d 368, 371–372 (1990).  The Prudential
   policy—not the Primerica policy—appears to be the policy that was a fringe benefit of Mr. Atkinson's job.  (Dkt.
23 #24 at 2.) To the extent that the court applied the presumption too broadly, the error does not change the current
   analysis.  The Court correctly determined that the Prudential policy went to Allred under ERISA.  Additionally, the
   Court correctly denied Allred's summary judgment motion on the Primerica policy because of a genuine issue of
24 material fact with respect to forgery.

1   *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  Moreover, this policy is "to be applied with

2   extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

3   (citations omitted).  "The court considers five factors in assessing the propriety of leave to

4   amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and

5   whether the plaintiff has previously amended the complaint."  Allred argues (1) that any

6   amendment is futile, (2) that there has been undue delay, and (3) that she will suffer prejudice as

7   a result of the amendment.

8           Allred argues that any amendment is futile because the only evidence of forgery is expert

9   opinion that the Court should exclude.  First, there is no requirement that the Court look at the

10  strength of the evidence on a Motion to Amend.  Additionally, as discussed above, the Court has

11  already concluded that Carlson's testimony of forgery is enough to survive the summary

12  judgment stage.  Because Carlson's testimony is not excluded, an amendment is not futile.

13          Next, Allred argues that there has been undue delay and that any amendment will be

14  unduly prejudicial.  Allred claims that Atkinson did nothing to obtain expert testimony to support

15  her "reserved" cross-claims until well after the discovery deadline and that Atkinson never said

16  she intended to assert a claim that Allred herself forged the documents.

17          Although Atkinson may have delayed in bringing these cross-claims, undue delay by

18  itself is insufficient to justify denying a motion to amend.  *Bowles v. Reade*, 198 F.3d 752, 757

19  (1999) ("We have previously reversed the denial of a motion for leave to amend where the

20  district court did not provide a contemporaneous specific finding of prejudice to the opposing

21  party, bad faith by the moving party, or futility of the amendment.").  Allred should have been on

22  notice that Atkinson intended to assert these cross-claims.  Atkinson specifically reserved these

23  claims, and she has repeatedly argued that the documents were forged.  After consulting with an

24

1   expert, Atkinson asserted the claims she has been suggesting for two years. The addition of these

2   cross-claims is nothing more than housekeeping on Atkinson's part.  Even with the amendment,

3   Allred's argument remains the same—that the signatures on the change of beneficiary form are

4   authentic.  The amendment is not unduly prejudicial.  The Motion to Amend [Dkt. #72] is

5   granted.

6                                      **III.    CONCLUSION**

7          Allred's Motion for Summary Judgment [Dkt. #66] is DENIED.

8          Atkinson's Motion to Amend Pleadings to Assert Cross-Claims is GRANTED.

9          IT IS SO ORDERED.

10         Dated this 6th day of December, 2012.

11

12                                              Ronald B. Leighton
                                                United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24